# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

**VIOLET A. DEGNER,**

        Plaintiff,

    v.

**NANCY A. BERRYHILL,**[1]
Commissioner of Social Security,

        Defendant.

Case No. 3:16-cv-00168-KI

**OPINION AND ORDER**

        George J. Wall
        Law Offices of George J. Wall
        1336 E. Burnside Street, Suite 130
        Portland, OR 97214

                Attorney for Plaintiff

        Billy J. Williams
        United States Attorney
        District of Oregon

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

PAGE 1 – OPINION AND ORDER

Janice E. Hebert
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902

Daphne Banay
Special Assistant United States Attorney
Office of General Council
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

KING, Judge:

       Ms. Violet A. Degner seeks judicial review of the Commissioner of the Social Security

Administration's ("Commissioner") final decision denying her application for Child's Disability

Insurance Benefits and Supplemental Security Income pursuant to 42 U.S.C. § 405(g). For the

following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

       The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

       Where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this Court may not substitute its judgment

PAGE 2 – OPINION AND ORDER

for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

**A.  Plaintiff's Application**

Ms. Degner protectively filed applications for Child's Disability Insurance Benefits ("DIB") on March 1, 2012, and for Supplemental Security Income ("SSI") on March 15, 2012. AR 84. She alleges disability due to bipolar disorder, plus other mental disorders; bipolar II disorder; and generalized anxiety disorder. AR 304. In both applications, Ms. Degner alleged disability beginning July 1, 2011. AR 84. Ms. Degner was 21 years of age on the alleged disability onset date. *Id.* The Commissioner denied her application initially on June 18, 2012, and again on September 19, 2012, after reconsideration. AR 205-07, 208-09. Ms. Degner filed a written request for hearing on November 5, 2012. AR 84, 210. A hearing was held before Administrative Law Judge ("ALJ") Atkins on January 27, 2014. AR 104-39.

The ALJ issued a decision finding Ms. Degner not disabled as defined by the Social Security Act on July 9, 2014. AR 84-97. Ms. Degner filed a timely request for review of the ALJ's decision on July 18, 2014. AR 79-80. The Appeals Council denied her request for review on December 18, 2015, finding that new information submitted for the first time before the Appeals Council did not provide a basis for reviewing the ALJ's decision. AR 2. The Appeals Council also found that additional evidence submitted by Ms. Degner from Cascadia BHC and

PAGE 3 – OPINION AND ORDER

Psychiatric Mental Health Nurse Practitioner ("PMHNP") Kristin Cummings related to a period of time later than the ALJ's decision of July 9, 2014, and therefore could not affect the ALJ's decision. AR 2. Ms. Degner now seeks review of the ALJ's decision and the Appeals Council's refusal to incorporate this new evidence into the record.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ found that Ms. Degner had not attained the age of 22 by July 1, 2011, the alleged onset date of her disabilities, thereby making her eligible for DIB and SSI. AR 86; *see also* 20 C.F.R. §§ 404.350(a)(5), 416.1856(a)(2). The ALJ then applied the sequential analysis. At step one, the ALJ found that Ms. Degner had not engaged in substantial gainful activity since July 1, 2011. AR 86; 20 C.F.R. §§ 404.1572, 404.1574, 416.972, 416.974. At step two, the ALJ found that Ms. Degner has four severe impairments: bipolar disorder, post-traumatic stress disorder, personality disorder, and polysubstance dependence/abuse. AR 86-87. Her polysubstance dependence/abuse impairment resulted from her history of using heroin, illegally obtained suboxone, crack cocaine, methamphetamines, alcohol, and marijuana. AR 86.

At step three of the sequential analysis, the ALJ found that none of these impairments met or medically equaled any of the listed impairments in Appendix 1 of the regulations parts 12.04, 12.06, and 12.09. AR 87.

The ALJ completed the RFC assessment and found that Ms. Degner has no exertional limitations, but does have a nonexertional limitation: she is limited to occasional contact with co-workers, supervisors, and the public. AR 88. The ALJ found that Ms. Degner's medically determinable impairments could reasonably cause her symptoms, and proceeded to evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent of her functional limitations. AR 90. The ALJ noted that Ms. Degner was able to cook and do laundry, maintain her personal hygiene to some degree, and return to doing art and craft work. The ALJ

PAGE 6 – OPINION AND ORDER

also noted Ms. Degner's testimony that if she had the necessary money, she would move to a residence of her own and would take care of herself. *Id.* The ALJ found these facts and statements to be inconsistent with her claims of severe impairments, and that her statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely credible as they were not fully consistent with her activities of daily living. *Id.*

The ALJ also discussed Ms. Degner's drug use before and after the alleged disability onset date of July 1, 2011. AR 90-91. Ms. Degner reported to Dr. Kerry Opdyke on May 16, 2011, that she began using intravenous heroin 1.5 years prior. AR 90, 406. Ms. Degner also stated that she purchased suboxone off the street which helped her to stop using heroin and stay off it for approximately two months. *Id.* However, Ms. Degner also told Dr. Opdyke that she was still using ecstasy, ketamine, and marijuana. *Id.* In July 2012, Ms. Degner reported that she was using marijuana and alcohol. AR 91. By August 2012, Ms. Degner was clean again and passed several drug tests between October and December of 2012. *Id.*

The ALJ then reviewed the record for medical opinions and lay testimony as to the severity of Ms. Degner's impairments. As relevant here, the ALJ weighed the following medical opinions and assigned significant weight to Dr. Cheryl Brischetto's opinion, but little weight to the opinion of Dr. Safina Koreishi and PMHNP Katherine Powell. AR 90-94.

Specifically, on June 11, 2012, PMHNP Powell and Dr. Koreishi wrote and signed a statement asserting that Ms. Degner was then under their care for "a severe, persistent, chronic illness" and that her "current symptoms and level of functioning categorize her as disabled." AR 848. The ALJ assigned "little weight" to this opinion because it did "not consider the claimant's improvement after she stopped using heroin and methamphetamines. Records show no

methamphetamine use after July 2012. As a result, this statement has addressed the claimant's condition only during periods of drug use and early attempts to quit using." AR 94.

On February 25, 2014, at the request of Disability Determination Services of the State of Oregon, Dr. Brischetto completed a neuropsychological screening of Ms. Degner. AR 1090-1106. The ALJ assigned "significant weight" to this opinion because it was based on a "full examination, with cognitive testing and an interview." AR 93. Dr. Brischetto uncovered inconsistencies between Ms. Degner's statements and the results of her interview and examination. AR 93-94, 1091, 1093, 1097, 1098-1100. For example, Dr. Brischetto found that the "severity of [Ms. Degner's] self-reported mood ratings was not consistent with her appearance in the exam, or with her report of activities of daily living." AR 1098. Dr. Brischetto noted that Ms. Degner takes the Bolt bus to Seattle "every other week" and "is reportedly fine on the trip up there" partly because there are not many other people on the bus. AR 1090, 1094.

Dr. Brischetto also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) that rated various limitations as none, mild, moderate, marked, or extreme. AR 1108-10. Dr. Brischetto did not identify any limitations as marked or extreme. *Id.* Dr. Brischetto did not allow Ms. Degner to opt-out of subtests as a part of her cognitive testing as Dr. Scott Alvord had done. AR 93. The ALJ also noted that Dr. Brischetto's examination was thorough enough to identify inconsistencies in Ms. Degner's statements and her actual social functioning abilities.

Finally at step three, the ALJ considered lay witness statements submitted by Ms. Degner's mother and father. AR 95-96. In April of 2012, Ms. Degner's mother, Claudia Degner, completed a Function Report and offered several examples of how she assisted her daughter with certain life activities. AR 336-343. This included reminding her to take her medications, attend

appointments, and perform chores. AR 95. Claudia Degner also stated that Ms. Degner would "often forget to eat," although she "would cook a meal once a month, and occasionally would cook other food." *Id.* Claudia Degner also claimed that while Ms. Degner "could find a job, she is not socially appropriate and would not be worth keeping on as an employee." *Id.* The ALJ gave Claudia Degner's opinion only "some weight" because Ms. Degner had shown improvement since April of 2012. *Id.*

On January 20, 2014, Ms. Degner's parents, Claudia and Michael, submitted a joint statement opining that Ms. Degner "is unemployable because she is paranoid, angry, [and] subject to medication side effects." AR 96, 368-70. While the ALJ gave "some weight" to the joint statement, he noted that "the determination of whether an individual is unemployable and deserves benefits belongs to the Commissioner." AR 96. Furthermore, according to the ALJ, Ms. Degner's disability had improved as indicated by her ability to ride a bus to Seattle every two weeks, sing in her boyfriend's band, and do craft projects. *Id.* Considering this evidence in the context of the entire record, the ALJ determined that "the limitations of the claimant's residual functional capacity are considered warranted, but no greater or additional limitations are justified." *Id.*

At step four of the sequential analysis, the ALJ confirmed that Ms. Degner had no past relevant work. Thus, transferability of job skills was not an issue. AR 96.

At step five, the ALJ determined that Ms. Degner was not disabled as defined by the Social Security Act because she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 96-97; *see* 20 C.F.R. §§ 404.1569, 416.969. The ALJ considered Ms. Degner's residual functional capacity, age, education, and work experience in conjunction with a vocational expert's ("VE") testimony and the Medical-

Vocational Guidelines. AR 96; *see* 20 C.F.R. Part 404, Subpart P, App. 2 (Medical-Vocational Guidelines). While the ALJ identified Ms. Degner's nonexertional limitations, the VE nonetheless testified that she "would be able to perform the requirements of representative occupations such as: Kitchen helper . . . ; Hand packager . . . ; and Lab helper . . . ." AR 97. From this testimony, the ALJ concluded: "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate . . . ." AR 97.

Ms. Degner submitted to the Appeals Council a Mental Residual Functional Capacity assessment ("MRFC assessment") completed by PMHNP Cummings on June 17, 2015, over one year after the ALJ's decision. AR 11. In that MRFC assessment, PMHNP Cummings opined that Ms. Degner has moderately severe or severe limitations with regard to 14 of 20 activities listed on the MRFC assessment form. AR 9-11. PMHNP Cummings further concluded that Ms. Degner's level of impairment would likely increase due to the following work-related stressors: disagreeable customers, even on an infrequent basis; production demands; demands for accuracy; attendance requirements; having to make accurate and independent decisions on a consistent basis; environmental distractions; general customer service requirements; criticism from supervisors; confrontation with supervisors or co-workers; socially induced anxiety; and mood instability. AR 11. The Appeals Council "looked at" this additional evidence, but concluded the opinion was about a later time and did not affect the period on or before the ALJ's disability decision on July 9, 2014. AR 2. The Appeals Council therefore did not include PMHNP Cummings's opinion in the record. *See* AR 6.

## DISCUSSION

Ms. Degner argues that the Appeals Council erred in concluding that the new evidence from PMHNP Cummings was not relevant to the ALJ's decision. *See* AR 2. She further argues

that the ALJ improperly rejected the testimony of her parents, Claudia and Michael Degner. For the reasons explained below, neither argument compels a remand to the Commissioner.

## A.  Supplemental Evidence Submitted to the Appeals Council

Ms. Degner first argues that the Appeals Council erred in its rejection of PMHNP Cummings's assessment. Ms. Degner argues that the June 22, 2015, MRFC assessment by PMHNP Cummings relates to a time on or before the ALJ's July 9, 2014, determination because it undermines the ALJ's reason for assigning little weight to Dr. Koreishi's and PMHNP Powell's 2012 opinion. Specifically, PMHNP Powell concluded that Ms. Degner suffered from a "severe, persistent, chronic illness" which "categorize[s] her as disabled." *See* AR 94, 848. The ALJ found that this medical opinion had little weight because it "does not consider the claimant's improvement after she stopped using heroin and methamphetamines." AR 94. Thus, it "addressed the claimant's condition only during periods of drug use and early attempts to quit using." *Id.*  Ms. Degner argues that the Appeals Council should have considered the new information from PMHNP Cummings because it relates to the same illness that existed prior to the ALJ decision and shows that her functional limitations persisted even when she was no longer using heroin. Ms. Degner therefore asks that the Commissioner consider her claim in light of PMHNP Cummings's June 17, 2015, opinion to determine if Dr. Koreishi's and PMHNP Powell's June 2012 opinion should be given full weight, and if so whether that changes the Commissioner's determination as to Ms. Degner's disability.

As an initial matter, the Appeals Council's denial of Ms. Degner's request for review is not subject to judicial review. 42 U.S.C. § 405(g); *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) ("We have held that we do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action."). Further, according to the

Commissioner's regulations, "the Appeals Council shall consider [new and material] evidence *only where it relates to the period on or before the date of the administrative law judge hearing decision*." 20 C.F.R. §§ 404.970(b), 416.1470(b) (emphasis added). Here, the Appeals Council "looked at" the new evidence but concluded it did not relate to the relevant period. AR 2.

Indeed, PMHNP Cummings's MRFC assessment makes no observations and offers no opinion as to Ms. Degner's disability prior to June 17, 2015. AR 9-11. The MRFC in question consists of 20 activities for which PMHNP Cummings identified Ms. Degner's level of limitation. Each activity is followed by check boxes indicating a slight/none, moderate, moderately severe, or severe limitation. *Id.* PMHNP Cummings left the comment sections following each set of activities blank, instead only making x-marks under one of the four possible degrees of limitation. Importantly, the final line of the MRFC assessment form reads: "The above-described conditions have existed to this degree of severity since at least _____." AR 11. PMHNP Cummings left this space blank. *Id.*

Ms. Degner relies on *Brewes v. Commissioner* for the proposition that the Appeals Council must accept PMHNP Cummings's opinion "if it has even a slight bearing on the case." ECF 19 at 6 (citing *Brewes*, 682 F.3d 1157, 1163). On the contrary, *Brewes* does not compel such a result since the Appeals Council in that case expressly considered the new evidence in determining it did not undermine the ALJ's opinion. *Brewes*, 682 F.3d at 1161-62. [2]

Because the Appeals Council did not make PMHNP Cummings's June 2015 opinion part of the record, AR 6, the Court considers whether this new evidence meets the standards of materiality and good cause. *Brewes*, 682 F.3d at 1164; 42 U.S.C. § 405(g). For new evidence to

---

[2] An unpublished opinion from this Circuit confirms that new evidence of functioning during a period of sobriety, not relating to the period on or before the ALJ's decision, should be disregarded by the Appeals Council and the court. *Clark v. Massanari*, 21 F. App'x 596, 598 n.3 (9th Cir. 2001).

be material, it must bear substantially on the matter in dispute and there must be a "reasonable possibility" that it would have changed the ALJ's decision. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). The Court finds that PMHNP Cummings's opinion is not material because it conflicts with Dr. Brischetto's opinion and would therefore not change the ALJ's decision. *Compare* AR 9-11, *with* AR 1108-09.[3]

**B.  The ALJ Adequately Considered the Testimony of Ms. Degner's Mother and Father**

The ALJ adequately considered the two opinions of Ms. Degner's parents and provided germane reasons for assigning only "some weight" to both. *See* AR 95-96. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ did not, as Ms. Degner asserts, outright reject Claudia and Michael Degner's opinions. On April 20, 2012, Claudia Degner completed a Function Report as to Ms. Degner's symptoms and impairments in performing regular daily activities. AR 336-343. The ALJ assigned this opinion some weight, but declined to give it full weight because "the claimant has shown improvement" since April of 2012. AR 95. The ALJ noted that, by the time of the hearing on July 9, 2014, Ms. Degner was able to take a bus to Seattle, go to clubs and sing in her boyfriend's band, and make bracelets and scarves. AR 95, 97. This is a

---

[3] Ms. Degner testified at her January 2014 hearing that her substance abuse ended 1.5-2 years prior. AR 111. Ms. Degner reported the same to Dr. Brischetto by stating that she last used drugs about 1.5 years before their interview. AR 1095. Accepting these statements as true, this means that Ms. Degner was relatively sober for approximately 1.5-2 years at the time of Dr. Brischetto's examination. Therefore, the persistence of Ms. Degner's social functioning limitations even in periods of relative sobriety was assessed by Dr. Brischetto in February of 2014, and found to be less than marked. AR 1108-09. This opinion conflicts with the inference Ms. Degner seeks to draw from PMHNP Cummings's opinion that her social functioning limitations remained severe/marked even during periods of sobriety.

germane reason for assigning less than full weight to Claudia Degner's 2012 opinion and is
supported by substantial evidence in the record. *See* AR 1091-93, 1100.

On January 20, 2014, Ms. Degner submitted a joint statement from her parents, Claudia
and Michael Degner. AR 369, 372 (duplicates). The statement offered several observations as to
Ms. Degner's ability to perform daily activities. In summary, the joint statement concluded that
"we believe [Ms. Degner] is unemployable" and she "is a prime candidate for Social Security
Disability." AR 370. The ALJ assigned "some weight" to this joint statement, and gave two
reasons for doing so. AR 96.

First, the ALJ did not accept their conclusions because "the determination of whether an
individual is unemployable and deserves benefits belongs to the Commissioner." *Id.* Second, the
ALJ found that this joint statement conflicted with other evidence in the record. This was, again,
based on Ms. Degner's social activities and ability to complete craft projects. *Id.* The first reason
is not necessarily germane to the observations contained in the joint statement, but is an accurate
statement of the law with regard to their conclusions. 20 C.F.R. §§ 404.1527(d)(1),
416.927(d)(1) ([The Commissioner is] responsible for making the determination or decision
about whether you meet the statutory definition of disability."). The second reason is germane to
the joint statement because it puts into question whether the observations of her parents are a full
accounting of Ms. Degner's abilities and limitations, or alternatively because the statement does
not account for apparent improvements in Ms. Degner's social functioning.

Consistent with the ALJ's conclusion, the parents' joint statement contradicts Ms.
Degner's own statements as well as the opinion found in Dr. Brischetto's Neuropsychological
Screening dated February 25, 2014. AR 125-26, 1090-1100. Dr. Brischetto's examination of Ms.
Degner included an in-person interview as well as a thorough review of her medical record. AR

1090. Dr. Brischetto noted that Ms. Degner "take[s] a public bus (Bolt bus) to Seattle to visit her boyfriend every other week," and that "[s]he is reportedly fine on the trip up there, except for the fact that she can't smoke cigarettes for 2.5 hours." AR 1091. Ms. Degner reported that she "sings in her boyfriend's band, on occasion, when she is in Seattle in local bars or clubs." AR 1092. This led Dr. Brischetto to conclude that she "did not see [Ms. Degner] as fitting the full criteria for Social Anxiety, or an Agoraphobia." AR 1099. Ms. Degner also reported to Dr. Brischetto that she makes bracelets, drawings, and scarves. *Id.* When asked what she would do if she had her own money, Ms. Degner reported "that she might move to Seattle, and find someone to split the rent with her." AR 1093. These statements by Ms. Degner, as reported by Dr. Brischetto, conflict with the parents' observations. In their joint statement, Claudia and Michael Degner opined that "even the most mundane of tasks seem to be impossible for her," and that she "is very dependent on others in order to survive." AR 373. The ALJ rationally took these two opinions to be at odds with regard to Ms. Degner's social functioning limitations. Thus, the ALJ identified germane reasons for only assigning some weight to the parents' joint statement.

    Ms. Degner argues that none of these activities—i.e. riding the bus to Seattle, singing in her boyfriend's band, or completing craft projects—are valid reasons for the ALJ to discount her parents' testimony. She asserts that she does not have to cooperate with others to perform any of these activities. According to her, "[n]one of these activities show that Plaintiff can get along with co-workers day in and day out, forty hours a week, or that she can appropriately take criticism from supervisors." ECF 19 at 7. Yet, the ALJ need only provide germane reasons for discounting their testimony. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). Under the record in this case, the evidence of Ms. Degner's capacity to successfully engage in these daily life activities is enough of a contradiction with her parents' observations and conclusion of

disability to support the ALJ's discounting their opinion. The ALJ's decision here is rational, and thus must be upheld. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

## CONCLUSION

The Commissioner's decision that Ms. Degner is not disabled as defined by the Social Security Act is AFFIRMED and Ms. Degner's Motion for Remand and Reconsideration is DENIED.

**IT IS SO ORDERED**.

DATED this   22nd  day of February, 2017.

/s/ Garr M. King
Garr M. King
United States District Judge

PAGE 16 – OPINION AND ORDER